**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | | |
|---|---|---|
| **LIFE INSURANCE COMPANY OF NORTH AMERICA,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No. 08-2446** |
| **LARRY SIMPSON, as natural parent and next of friend of VALEWIS SIMPSON, a minor, RUBY WHARTON, in her capacity as Court appointed Guardian of VALEWIS SIMPSON, BARBARA CARR, JODIE INGRAM, LINDA FOWLER, SHEILA LANCASTER, ESTHER LAMAR FOWLER-GLENN, and THE ESTATE OF VALERIE CARR,** | ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

_____

**ORDER GRANTING LIFE INSURANCE COMPANY OF NORTH AMERICA'S
MOTION FOR ORDER OF DISCHARGE, DISMISSAL AND PERMANENT
INJUNCTION AND TO DISMISS COUNTERCLAIMS**

_____

Before the Court is Interpleader-Plaintiff Life Insurance Company of North America's ("LINA") Motion for Order of Discharge, Dismissal and Permanent Injunction and to Dismiss Counterclaims as filed on February 13, 2009 (D.E. #32). The Defendants have failed to timely respond to LINA's motion, making the underlying motion now ripe for adjudication. For the reasons set forth below, Interpleader-Plaintiff's Motion is hereby **GRANTED**.

**BACKGROUND**

This interpleader action arises out of a dispute regarding the proceeds of a life insurance

1

Policy (the "Policy") issued by LINA to Ms. Valerie Carr's employer on behalf of Ms. Carr. (Amend. Compl. ¶ 17.) On November 8, 2007, Ms Carr passed away. (*Id.* at ¶ 15.) At the time of her death, Ms. Carr's death benefit under the Policy was $55,000 in basic coverage and $165,000 in supplemental coverage. (*Id.* at ¶ 19.) During the administration of Ms. Carr's estate, a dispute has arisen over who the proper beneficiary to the Policy is. (*Id.* at ¶ 17.) At this juncture, the potential claimants to the proceeds of the Policy appear to be Jodie Ingram, Linda Fowler, Sheila Lancaster, Barbara Carr, Larry Simpson, as the natural father and custodial parent of Valewis Simpson (Ms. Carr's son), Ruby Wharton, as the court-appointed guardian of Valewis Simpson, and Esther Lamar Fowler-Glenn. (*Id.* at ¶ 18.)

LINA expressly disavows any interest in the death benefit and acknowledges the benefit should be paid according to the findings, conclusions, and instructions of the Court. (Pl's Mot. for Discharge 2.) LINA filed its Complaint for Interpleader on July 11, 2008. (D.E. # 1.) LINA subsequently filed an Amended Complaint for Interpleader on January 6, 2009. (D.E. # 27.) Pursuant to Court Order, LINA has paid and the Clerk of Court has accepted for deposit the sum of $220,000.00. (D.E. # 21.) According to LINA, this sum represents the total amount due under Ms. Carr's life insurance policy. (Pl.'s Mot. for Discharge 2.)

On September 9, 2008 the Estate of Valerie Carr (the "Estate") filed its Answer and Counterclaim to LINA's Complaint. (D.E. # 19.) In the Estate's Counterclaim, it alleges that on numerous occasions it has requested the complete claims file and other documentation directly from the attorney for the agent of LINA, or from LINA, itself (among other individuals and entities). (Def. Estate's Countercl. ¶ 1.) Further, the Estate contends that neither LINA nor its agents have been forthcoming in providing documents to which the Estate has an absolute right.

2

(*Id.* at ¶ 2.)  According to the Estate, the beneficiary designation documents possess glaring inconsistencies that would result in the alienation of Ms. Carr's minor son from funds that were to be designated for his support in the event of his mother's death.  (*Id.* at ¶ 3.)  The Estate alleges that the Probate Court of Shelby County conducted a hearing requesting these documents; however, neither LINA nor its agents appeared.  (*Id.* at ¶ 4.)  As a result of these allegations, the Estate asserts that LINA has acted in bad faith, which could now jeopardize the appropriate and equitable settlement of the life insurance claim.  (*Id.* at ¶ 5.)  However, the Estate has not identified what relief it seeks as a result of their allegations.

On February 12, 2009, Ruby Wharton, the court-appointed guardian for Valewis Simpson, filed her Answer and Counterclaim to LINA's Amended Complaint.  (D.E. # 31.)  In Mrs. Wharton's counterclaim she states that "the representative and attorney of the Estate of Valerie Carr has advised the Counter-Plaintiff of their efforts to obtain a verified copy of the beneficiary form and the Plaintiff and its representatives have not been forthcoming in producing the beneficiary documentation."  (Def. Ruby Wharton's Countercl. ¶ 2.)  Like the Estate, Ms. Wharton does not identify what relief she seeks as a result of this allegation.

LINA then filed the underlying motion, asserting they should be dismissed from this case pursuant to Federal Rule of Civil Procedure 12(b)(6) and 54(b).  In so doing, LINA seeks (1) discharge from all liability arising from or payable as a result of the death of Valerie Carr by dismissing LINA from this action with prejudice; (2) an order permanently enjoining Defendants Larry Simpson, Barabara Carr, Jodie Ingram, Linda Fowler, Sheila Lancaster, Esther Lamar Fowler-Cleenn, the Estate, Ruby Wharton, and any other unidentified person who has made a claim or who may make a claim to the interpleaded funds from taking any action or commencing

any proceeding against LINA, in relation to the interpleaded funds; (3) dismissal of the Estate's counterclaim against LINA for failure to state a claim upon which relief may be granted; and (4) dismissal of Mrs. Wharton's counterclaim against LINA for failure to state a claim upon which relief may be granted.  (LINA's Memo. in Support of Mot. to Dismiss 7-8.)

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[1] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[2]  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[3]  "The Federal Rules of Civil Procedure do not require a claimant to set out in detail all the facts upon which he bases his claim."[4]

The Supreme Court has more recently stated that the Federal Rules "do not require a heightened fact pleading of specifics, but only enough facts to state a claim that is plausible on

---

[1]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[2]  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[3]  *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 889, 902 (6th Cir. 2003).

[4]  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

its face."[5]  The Sixth Circuit has subsequently acknowledged "[s]ignificant uncertainty" as to the

intended scope of *Twombly*.[6]  Consequently, the Sixth Circuit has articulated the following as the

standard of review for 12(b)(6) motions: on a motion to dismiss, the Court must construe the

complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and

determine whether the complaint contains "enough facts to state a claim to relief that is plausible

on its face."[7]  Thus, although the factual allegations in a complaint need not be detailed, they

"must do more than create speculation or suspicion of a legally cognizable cause of action; they

must show entitlement to relief."[8]

## ANALYSIS

### I. The Counterclaims

Beginning with the Estate and Mrs. Wharton's counterclaims as to whether LINA has

acted in bad faith for failing to appear at a probate court hearing and for failing to be

forthcoming in providing documents related to Ms. Carr's policy, LINA raises three arguments

in support of their dismissal.  First, LINA contends that from the face of the counterclaims it is

unclear what documents the Estate and Ms. Wharton requested, when they were requested, or

---

[5]  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) ("retiring" the "no set of facts" standard first announced in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

[6]  *Weisbarth v. Geauga Park Dist.,* 499 F.3d 538, 541 (6th Cir.2007); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 337 (6th Cir.2007) ("We have noted some uncertainty concerning the scope of *Bell Atlantic Corp. v. Twombly,* ... in which the Supreme Court 'retired' the 'no set of facts' formulation of the Rule 12(b)(6) standard ....").

[7]  *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Twombly,* 127 S.Ct. at 1974 (2007)).

[8]  *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (emphasis in original) (citing *Twombly,* 127 S.Ct. at 1964-65).

5

how LINA's response was inadequate, and to that end, LINA claims to have already produced to the Estate the documents LINA had in its possession.  Furthermore, LINA asserts that it is under no duty to be "forthcoming" with the documents or to appear at a Probate Court hearing, and as such, according to LINA the fact that it did not respond to the Estate's informal request for documents does not give rise to a cause of action.

Second, LINA argues there is no general claim for "bad faith."  Although Tennessee law does provide a statutory cause of action for bad faith *denial* of an insurance claim, LINA claims that it has at all times specifically denied any interest in the proceeds of Ms. Carr's Policy and stood ready to pay the proceeds to the proper beneficiary.  As such, LINA asserts that it is undisputed that it has not denied any claim for the benefits to Ms. Carr's policy, and as such, a bad faith claim cannot be asserted against them.

Last, LINA argues the Estate does not have standing to assert a claim against LINA, because the Estate cannot show that LINA's actions caused it "injury-in-fact."  LINA seeks to demonstrate the Estate's lack of standing by showing that the Estate has not alleged that LINA has improperly delayed payment of the proceeds or somehow breached the agreement made by virtue of the Policy, and that the Estate is not a beneficiary, and thus, has no right to the proceeds of the Policy.

A careful reading of both the Estate and Mrs. Wharton's counterclaims reveals that neither party has provided any facts to support their claims that LINA has acted in bad faith, nor have they provided any information regarding what kind of damages they have suffered as a result of LINA's actions.  Not only have Defendants' failed to provide the facts upon which they base their claim, but neither party has cited to any statute or common law doctrine that would

entitle them to relief based on these actions.  Although the factual allegations in a complaint

need not be detailed, they "must do more than create speculation or suspicion of a legally

cognizable cause of action; they must show entitlement to relief."[9]  The facts and allegations laid

out in Defendants' counterclaim does just this.  It creates a mere speculation or suspicion of a

legally cognizable claim, if that, and this is not enough.  Furthermore, the Defendants' have

completely failed to respond to or dispute LINA's motion.

Additionally, LINA is correct in its contention that Tennessee law will not support a

general "bad faith" claim, as Tennessee does not recognize a general common law tort for bad

faith by an insurer against an insured.[10]  Instead, the exclusive remedy for such conduct is

statutory.[11]  And although under Tenn. Code Ann. § 56-7-105 a cause of action may be premised

on an insurance company's bad faith denial of an insurance claim,[12] this is not the set of

circumstances in this case.  Neither party has asserted that LINA denied the insurance claim, and

LINA has at all times denied any interest in the policy's proceeds.  (*See* LINA's Compl. for

Interpleader ¶ 21.)  Instead, LINA has been unable to pay the proceeds, because the remaining

parties dispute who the proper beneficiary is.

If instead the Defendants are suggesting that LINA has conducted itself in the underlying

litigation in such a way that evidences bad faith, and as such, bars the application of the

---

[9] *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly,* 127 S. Ct. at 1964-65).

[10] *Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 590 F. Supp. 2d 970, 973 (M.D. Tenn. 2008).

[11] Tenn. Code Ann. § 56-7-105.

[12] Tenn. Code Ann. § 56-7-105; *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381 (Tenn. 2009).

equitable remedies available by virtue of filing an interpleader complaint, Defendants have completely failed to allege any facts that would sufficiently support such a contention.[13]  As such, accepting all of the counterclaimants' factual allegations as true, the Estate and Mrs. Wharton's claims must be dismissed for failure to state a claim upon which relief may be granted, and thus, Plaintiff's Motion to Dismiss the Defendants Counterclaims is hereby **GRANTED**.[14]

## II.  Discharge

LINA next requests that the Court enter an order dismissing Plaintiff from this action and enjoining all Defendants from bringing or maintaining further action against Plaintiff in connection with this matter.  In LINA's Complaint for Interpleader, it states the Court has federal question jurisdiction, because this suit relates to a group life insurance policy that is governed by the Employment Retirement Income Security Act of 1974 ("E.R.I.S.A.").  As such, Interpleader is a form of equitable relief available to Plaintiff pursuant to Federal Rule of Civil Procedure 22.

Under Rule 22, "[p]ersons having claims against the plaintiff may be joined as

---

[13]  *See, e.g.*, *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009) (holding that "where a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy"); *Abstract & Title Guar. Co. v. Chi. Ins. Co.*, 489 F.3d 808, 813 (7th Cir. 2007) (holding that a finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will);          *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 361 (S.D.N.Y. 2008).

[14]  .  Because the Court finds that the counterclaims should be dismissed for failure to plead facts which could support a cause of action for bad faith, the Court need not specifically reach the issue of standing.

defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability."[15]  Interpleader is an equitable proceeding that "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding."[16]

An interpleader action typically proceeds in two stages.[17]  During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader.[18]  During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial.[19]  "When the court decides that interpleader is available...it may issue an order discharging the stakeholder, if the stakeholder is disinterested, enjoining the parties from prosecuting any other proceeding related to the same subject matter, and directing the claimants to

---

[15]  Fed. R. Civ. P. 22.

[16]  *U.S. v. High Tech. Prods., Inc.*, 497 F.3d 637, 642 (6th Cir. 2007); *see also Prudential Ins. Co. of Am.*, 553 F.3d at 262 ("[I]nterpleader allows a stakeholder who 'admits it is liable to one of the claimants, but fears the prospect of multiple liability[,] ... to file suit, deposit the property with the court, and withdraw from the proceedings.'" (citations omitted)).

[17]  *High Tech. Prods., Inc.*, 497 F.3d at 642.

[18]  *Id.*; *see also Aon Corp. v. Hohlweck*, 223 F. Supp. 2d 510, 514 (S.D.N.Y. 2002).

[19]  *High Tech. Prods., Inc.*, 497 F.3d at 642.

interplead...."[20]  Absent the presence of bad faith on the part of the stakeholder or the possibility that the stakeholder is independently liable, and after the interpleaded funds have been paid into the registry of the Court, discharge should be readily granted.[21]

In the case at bar, LINA does not contest its liability under the Policy, nor does it claim any entitlement to the proceeds.  Instead, LINA was unable to determine the identity of the beneficiary or beneficiaries without potentially subjecting itself to multiple liability, and thus, LINA paid the full amount of benefits due under the policy into the Court.   Accordingly, LINA is entitled to an order enjoining Defendants from bringing separate proceedings against LINA for the Policy proceeds and discharging Plaintiff from further liability to Defendants for the Policy proceeds.[22]  LINA's Complaint for Interpleader additionally requests recovery of all costs and expenses incurred in bringing this action, including reasonable attorney's fees.  (Compl. ¶ (e).) However, LINA does not address this issue in its underlying motion, and thus, the Court does not reach it at this time.  As such, LINA's Motion for Discharge **GRANTED**, and LINA is

---

[20]  *Id.*; *see also Prudential Ins. Co. of Am.*, 553 F.3d at 262 (The result of an interpleader action is that "'[t]he competing claimants are left to litigate between themselves," while the stakeholder is discharged from further liability with respect to the subject of the dispute." (quoting *Metro. Life Ins, Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007)); *Aon Corp.*, 223 F. Supp. 2d at 514 ("A discharge in interpleader 'permits the neutral stake holder having no claim to the subject matter of the action, to retire from the action and requires competing claimant to interplead their claims.'" (citations omitted)); *Sun Life Assurance Co. of Canada v. Thomas*, 735 F. Supp. 730, 732 (W.D. Mich. 1990).

[21]  *Kurland v. U.S.*, 919 F. Supp. 419, 421 (M.D. Fla. 1996); *Sun Life Assur. Co. of Canada*, 735 F. Supp. at 732 ("A neutral stakeholder asserting no claim to the disputed funds and having surrendered the disputed funds to the custody of the Court should be discharged from the action." (citing *New York Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 94 (2d Cir. 1983)).

[22]  *See, e.g.*, *Prudential Ins. Co. of Am. v. Goodiron*, No. 1965, 2008 WL 545006, *3 (D.N.J. Feb. 27, 2008); *Conn. Gen. Life Ins. Co. v. Thomas*, 910 F. Supp. 297, 300 (S.D. Tex. 1995); *Sun Life Assurance Co. of Canada*, 735 F. Supp. 730.

hereby dismissed from the underlying action, except for the limited issue of determining entitlement to attorney's fees and costs.

## III.  Entry of Final Judgment

LINA's final request is that judgment pursuant to Rule 54(b) be entered in their favor, as it asserts that its continued participation in this matter would cause it to expend time and resources without good cause. Federal Rule of Civil Procedure 54(b) states:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

An entry of final judgment is available pursuant to Rule 54(b) based on two independent findings.[23]  First, the court must determine whether the judgment is final.[24]  A judgment is considered final when "'an ultimate disposition of an individual claim has been entered in the course of a multiple claims action.'"[25]  Second, the court must expressly determine that there is no just reason for delay.[26]

The Sixth Circuit has provided "[a] nonexhaustive list of factors which a district court

---

[23]     *Gen. Acquisition, Inc. v. GenCorp Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994).

[24]     *Id.*

[25]     *Id.* (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 466 U.S. 1, 7 (1980)) (internal citation and quotation marks omitted).

[26]     *Id.*

11

should consider when making a Rule 54(b) determination."[27]  These factors include:

> (1) the relationship between the adjudicated claim and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obligated to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.[28]

"[S]ound judicial administration does not require that Rule 54(b) requests be granted routinely."[29]  Instead, it is within the Court's sound discretion to grant an entry of final judgment.[30]  LINA has already deposited the proceeds of the insurance Policy with the Court, and the counter-claims against LINA have now been dismissed.  There being no other claims against LINA, it no longer has any role in this litigation.  LINA's continued participation in this litigation for an indefinite period would cause it to expend additional resources and time for no good reason.  Therefore, the Court finds that there is no just reason for delaying entry of judgment.  As such, LINA's Rule 54(b) Motion is hereby **GRANTED**.

## <u>CONCLUSION</u>

Because Defendants' Counterclaims fail to state a claim upon which relief could be granted, they are hereby **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b).  Because Interpleader-Plaintiff LINA has properly invoked interpleader and paid the full amount

---

[27]    *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir. 1986).

[28]    *Id.*

[29]    *Curtiss-Wright*, 446 U.S. at 10.

[30]    *Id.*

due under the Policy into the Court's registry, its Motion for Discharge and Dismissal is hereby

**GRANTED**.  And because there is no just reason for delaying entry of judgment, LINA's Rule

54(b) Motion is hereby **GRANTED**.

      **IT IS SO ORDERED.**

                        **s/ S. Thomas Anderson**
                        S. THOMAS ANDERSON
                        UNITED STATES DISTRICT JUDGE

                        Date: July 16th, 2009.